## COOPER COTTON CO. v. FIRST STATE BANK OF O'DONNELL et al.

### No. 3555.

Court of Civil Appeals of Texas. Amarillo.

March 4, 1931.

Rehearing Denied April 15, 1931.

R. W. Haynie, Amo Fitzpatrick, and Cunningham & Oliver, all of Abilene, for plaintiff in error.

Lockhart, Garrard & Brown, of Lubbock, for defendants in error.

RANDOLPH, J.

In the motion for rehearing filed by plaintiff in error, it is earnestly insisted that, by reason of a misconception or mistake of the facts, this court has found that it is simply a question of the right to charge the draft of R. N. Leggett, Sr., back against Cooper Cotton Company, of which R. N. Leggett, Sr., was a member. We have therefore reconsidered the record before us and will now set out the result of our investigation.

This is the second time this case has been before this court. In the year 1923, on the former appeal, in an opinion which was not published, this court reversed the judgment of the trial court and remanded the case for a new trial' for the reason that the trial court admitted evidence upon an issue which was not pleaded.

There is an interim of practically eight years between the decision on that appeal and the hearing on this appeal.

The suit was originally brought by the plaintiffs Cooper Cotton Company, a firm composed of J. A. Cooper and R. N. Leggett, Sr., against the First State Bank of O'Donnell. Pending the former appeal, the First National Bank of O'Donnell took over the assets and assumed the liabilities of the First State Bank and was made a party defendant herein. R. N. Leggett, Sr., having died pending said appeal, J. A. Cooper continued the suit as surviving partner. On another trial judgment was again rendered against the plaintiffs, and appeal therefrom has been perfected to this court.

J. A. Cooper and R. N. Leggett, Sr., formed the partnership of Cooper Cotton Company for

the purpose of buying and selling cotton in the territory around O'Donnell, Tahoka, and Lamesa. Cooper furnished the capital of the firm in the sum of $2,500, and Leggett, Sr., operated the business of buying and selling cotton for that firm. Leggett, Sr., opened an account in the name of the Cooper Cotton Company with the First State Bank of O'Donnell by depositing the funds of the Cooper Cotton Company therein. At the time the Cooper Cotton Company began operations in the territory named, R.' N. Leggett, Jr., son of the partner of J. A. Cooper, was operating in that territory, also buying and selling cotton, independent of the Cooper Cotton Company.

It is agreed by the parties that, at the time the check drawn by the Cooper Cotton Company for $1,400, upon which the suit is based, was turned down by the bank, the Cooper Cotton Company would have had on deposit in said bank the sum of $1,438.41 if no part of the loss incurred by R. N. Leggett, Jr., had been charged to the account of that company.

In reply to plaintiffs' petition, the defendant, First State Bank, by way of special defense, alleged that about the 1st of December, 1920, R. N. Leggett, Sr., made a deposit with it, representing that he was in the business of buying and selling cotton, and that in such business he used the trade-name of Cooper Cotton Company and made such deposit in that name; that said Leggett, Sr., held himself out to other banks and to the public generally that he was using and doing business under the trade-name of Cooper Cotton Company; that the actions, statements, and representations of Leggett, Sr., led it to believe and it did believe that said Leggett, Sr., was doing business for himself, and that he was only using the name of Cooper Cotton Company as a trade-name, and that the funds so deposited with it were the personal funds of said Leggett, Sr. Said defendant further alleges that Leggett, Sr., drew checks on the account to pay his personal expenses and for many other purposes than in buying and selling cotton; that he did not always use the trade-name in buying and selling cotton, but often used his individual name in purchasing same, and such purchases were paid for out of the account of Cooper Cotton Company, and the proceeds of such sales were deposited in the name of Cooper Cotton Company; that all of these facts led the defendant, its agents and employees, to believe, and they did believe and understood, that said Leggett, Sr., was the sole owner of the funds deposited in the name of Cooper Cotton Company.

It is further alleged by defendant that, when Leggett, Sr., opened up said account he also represented to the defendant that his son, R. N. Leggett, Jr., would be in the vicinity of O'Donnell and Lamesa and would buy cotton in said places, and that he (said Leggett, Sr.) would stand behind any contract of purchase and sale made by his son, and that, after said statements and representations, said Leggett, Sr., did have business transactions with said Leggett, Jr., and did on one or more occasions pay the checks or drafts or overdrafts of Leggett, Jr. Defendant further alleged that thereafter there was presented to it a draft drawn by R. N. Leggett, Jr., for the sum of $5,022.13, which was attached to a bill of lading calling for fifty bales of cotton, which cotton had been consigned to R. N. Leggett, Sr., at Abilene, Tex.; that, at the time of the receipt of such draft, Leggett, Jr., had no money on deposit with defendant, but, on account of the various transactions that had taken place between said Leggett, Sr., and Leggett, Jr., defendant was led to believe and did believe that said Leggett, Sr., doing business under the trade-name of Cooper Cotton Company, had some interest in said fifty bales of cotton; that the defendant's agents and representatives advised said Leggett, Sr., that Leggett, Jr., did not have any funds on hand in defendant bank with which to pay the draft, and that, unless some arrangement was made, said draft would be returned, and thereupon said Leggett, Sr., requested the defendant to pay said draft and to take up said bill of lading; that, by reason of such request, defendant did pay such draft and held said bill of lading; that said Leggett, Sr., at the time promised and agreed with defendant that he would protect it from any loss accruing by reason of paying the draft; that at the time such agreement was made with said Leggett, Sr., it had no notice, actual or constructive, that J. A. Cooper or any other person other than said Leggett, Sr., and Leggett, Jr., was interested in the trade-name of Cooper Cotton Company, or was interested in the business being carried on by Leggett, Sr., under the trade-name of Cooper Cotton Company.

Further defendant alleged that Leggett, Sr., had on deposit with it under the trade-name of Cooper Cotton Company a sum of money sufficient to indemnify it against any loss that might be sustained on said fifty bales of cotton, and therefore paid out the money on said draft and received said cotton for the use and benefit of Leggett, Sr., and Leggett, Jr.

Defendant also alleges that Leggett, Jr., and Leggett, Sr., were interested in and joint owners of said fifty bales of cotton; that said fifty bales of cotton were originally purchased from Edwards Bros. at Tahoka, Tex., by the said Leggett, Sr., and that said cotton was originally shipped to Lane & Allen at Abilene; that, after said cotton had been received at Abilene and after the draft had been drawn by Leggett, Sr., in favor of Lane & Lane and after payment of such draft had been refused by Lane & Lane, and in order that said trade with Edwards Bros. might

go through and at the instance and request of Leggett, Sr., and for his own use and benefit, the said Leggett, Jr., drew said draft for $5,022.13 on the defendant bank as a means and for the purpose of paying and satisfying drafts which had theretofore been drawn by Leggett, Sr., on Lane & Lane aforesaid, and that, while said draft was in the name of Leggett, Jr., it was, in fact, in payment for cotton which had been purchased by Leggett, Sr., and was for the use and benefit of Leggett, Sr., and that, by reason thereof, Leggett, Sr., was the sole owner or at least a joint owner of same with Leggett, Jr.; that said cotton was later sold at the instance and request of said Leggett, Sr., and Leggett, Jr., and a loss was sustained to the amount of approximately $1,800, and that, at the time the loss was sustained, Leggett, Sr., had on deposit with defendant in the trade-name of Cooper Cotton Company, approximately $1,-400, and, after said loss was ascertained, defendant charged the account of Leggett, Sr., doing business under the trade-name of Cooper Cotton Company, with the sum of $1,400.44, and, at the time plaintiff presented the check for payment as alleged in their petition, they did not have any money on deposit with defendant, and defendant was under no legal obligations to pay said check; that, if there ever existed a partnership between Cooper and Leggett, Sr., it had no notice, actual or constructive, of the existence of such partnership, but, if same did, in fact, exist, that said Cooper turned over to said Leggett, Sr., the sum of $2,500 for the purpose of buying and selling cotton and permitted said Leggett, Sr., to handle said funds and money in any way that he saw proper, and permitted said Leggett, Sr., to hold himself out as the sole owner of said funds, and permitted him to draw checks on said fund for any purpose that he might desire, and that said Cooper should be and is now estopped to deny that said Leggett, Sr., had the right and authority to handle said fund in any way or manner he desired.

The court submitted the case to the jury upon special issues, and the jury found, in answer thereto, as follows: (a) That Cooper Cotton Company owned an interest in the fifty bales of cotton covered by the draft given in favor of Lane & Allen and drawn on the First State Bank of O'Donnell; (b) that the cashier of the First State Bank of O'Donnell, on December 3, 1920, the date he paid the draft in controversy, had not been informed and had no knowledge from any source that Leggett, Sr., was not the sole owner of the deposit made in said bank in the name of Cooper Cotton Company; (c) that the cashier of the defendant bank, at the time he paid the draft, believed from the words, acts, and conduct of R. N. Leggett, Sr., in his business dealings with said First State Bank of O'Donnell and said R. P. Weathers, its cashier, that

the funds deposited in said bank in the name of Cooper Cotton Company were the individual property of R. N. Leggett, Sr.; (d) that R. N. Leggett, Sr., before and at the time the draft in controversy was paid by the cashier of the defendant bank, requested the cashier to pay the same and stated to him that, if he would do so, he (the said Leggett, Sr.), would stand behind the draft; (e) that R. P. Weathers, as cashier of the First State Bank of O'Donnell, paid the draft in controversy on December 3, 1920, solely by reason of the said R. N. Leggett, Sr., requesting him to do so and stating that if he would do so that he would stand behind the draft.

The evidence, though conflicting, supports the verdict of the jury in their findings that the defendant bank paid the draft on the promise of Leggett, Sr., that he would stand behind it if they would pay it. It is also clear from the evidence that the defendant bank had no notice, actual or constructive, of the partnership between Cooper and Leggett, Sr., and that the bank believed that the deposit in the name of Cooper Cotton Company was the individual property of Leggett, Sr., and had no notice whatever that any other person was concerned in the business of that company, except Leggett, Sr., unless the name "Cooper Cotton Company," in which the deposit was carried, gave it notice as a matter of law that Leggett, Sr., was not the sole owner, but that others were interested in the account.

 The assumed name statute, Article 5924, R. C. S. 1925, provides as follows: "No person shall conduct or transact business in this State under any assumed name or under any designation, name, style, corporate or otherwise other than the real name of each individual conducting or transacting such business, unless such person shall file in the office of the county clerk of the counties in which such person conducts, or transacts or intends to conduct or transact such business, a certificate setting forth the name under which such business is, or is to be, conducted or transacted, and the true full name or names of each person conducting or transacting the same, with the post-office address of each. Said certificate shall be executed and duly acknowledged by the persons so conducting or intending to conduct said business in the manner provided for acknowledgment of conveyance of real estate."

The purpose of this statute is that the public may know who are the parties operating a business under an assumed name. This statute has been held not to invalidate a contract made by parties, one of whom is operating under an assumed name. As stated, the purpose of the statute was simply to make known the parties operating under the assumed name. We are of the opinion that it was the duty of Cooper and Leggett, Sr., to make the publication requested by this arti-

cle, and, where they did not do so and injury occurred to another party, or his interests were prejudiced by the failure to do so, no presumption can arise charging the said party with notice that other parties are interested in the business. Where it was in the power of Cooper to give the public notice of his interest in the business operated under an assumed name, and he failed to give such published notice, he cannot be permitted to use his default in order to invoke notice by presumption that he was a partner by reason of his operating under an assumed name, which in itself would have been suggested. Shults v. Krauskopf (Tex. Civ. App.) 286 S. W. 544. Especially is this true when the evidence shows that Cooper had placed it within the power of Leggett, Sr., to so operate the business and by his conduct and representations mislead parties with whom he was to transact business.

We therefore hold that the fact that the business transacted by Leggett, Sr., was in the name of Cooper Cotton Company was not notice to the defendant that J. A. Cooper was a partner interested with Leggett, Sr., in the business.

R. P. Weathers, cashier of the defendant bank, testified: "R. N. Leggett, Jr., possibly did notify us that he had sold all the cotton to Hart Bros. He told us to go to his father and have his father sign his name to the draft on Hart Bros. and his father did sign R. N. Leggett, Jr., to the draft. He did not endorse it in his own name. He did not guarantee it in any writing on the draft or otherwise. No, not in writing. The Hart Bros. draft came back also. * * * I do not know if R. N. Leggett, Jr., had bought these fifty bales of cotton from different persons. As to whether he bought cotton in the market generally and gave cotton acceptances for it—well, I think this fifty bales was bought from Edwards Bros. at Tahoka, but I do not know that. He drew this draft on Lane & Allen thinking he had sold the cotton to them. I believe he sold the cotton to Hart Bros. This draft here is given to Lane & Allen. It came to our bank and the draft that was drawn back for the fifty bales was on Hart Bros. at Abilene. I do not know that R. N. Leggett, Jr., was here when the cotton was sold to Lane & Allen. He was in Abilene when he drew this draft. I do not know how he paid Edwards Bros. for the cotton. I do not know if he paid for it or not. As to whether if he bought this cotton from the market generally from farmers or other men holding cotton here, did he give acceptances on my bank—when he bought cotton down there he did. If he bought it in Lamesa, O'Donnell or Tahoka, I do not know how he handled it. I think he was in Abilene when that draft was drawn. I suppose he took it from Lane & Allen by giving them a draft

for the bill of lading. That is a draft if unpaid, and sent Lane & Allen the money. Then there was a resale of this cotton to Hart Bros., and I took that draft to Hart Bros. in payment of what R. N. Leggett, Jr., owed us. It was after that the cotton was sold and applied. That transaction required quite a bit of negotiations by telephone between me and R. N. Leggett, Jr."

While the plaintiff contends that there were two different transactions, and that one of them was for the benefit of Cooper Cotton Company and the other was for Leggett, Jr., and totally disassociated with any transaction of Cooper Cotton Company, the evidence being conflicting, we cannot ignore or set aside the verdict. The judgment of the trial court is affirmed.

The original opinion herein is withdrawn, and the motion for rehearing is overruled.